IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 21-173 |
| NASSER McFALL | : | |

**GOVERNMENT'S CHANGE OF PLEA MEMORANDUM**

**I.     Background**

Defendant Nasser McFall is charged in a seven-count superseding indictment with conspiracy to maliciously damage property used in interstate commerce by means of an explosive, in violation of 18 U.S.C. § 844(n) (Count One), and four counts of maliciously damaging property used in interstate commerce by means of an explosive, and aiding and abetting, in violation of 18 U.S.C. §§ 844(i) and 2 (Counts Two, Three, Five, and Six).   The government is also seeking criminal forfeiture of the proceeds obtained through the defendant's crimes.   A guilty plea agreement has been entered into by the parties and is attached to this memorandum.   A change of plea hearing is scheduled before the Honorable Gene E.K. Pratter on June 29, at 10:00 a.m.

**II.     Statutes and Essential Elements of the Offenses**

<u>Count One: Conspiracy to damage property used in interstate commerce by means of an explosive, in violation of Title 18, United States Code, Section 844(n)</u>

Title 18, United States Code, Section 844(n) provides, in relevant part, that "except as otherwise provided in this section, a person who conspires to commit any offense defined in this chapter shall be subject to the same penalties as the penalties . . . prescribed for the offense the commission of which was the object of the conspiracy. ."

1

To convict the defendant of conspiracy to damage property used in interstate commerce by means of an explosive, the government must prove the following elements:

    1.    The conspiracy, agreement, or understanding to maliciously damage property or attempt to by use of an explosive, as described in the information, was formed, reached, or entered into by two or more persons;

    2.    At some time during the existence or life of the conspiracy, agreement, or understanding, the defendant knew the purpose(s) of the agreement;

    3.    With knowledge of the purpose(s) of the conspiracy, agreement, or understanding, the defendant then deliberately joined the conspiracy, agreement, or understanding; and

    4.    At some time during the existence or life of the conspiracy, agreement, or understanding, one of its alleged members knowingly performed one of the overt acts charged in the information and did so in order to further or advance the purpose of the agreement.

<u>Counts Two, Three, Five and Six: Maliciously damaging property used in interstate commerce by means of an explosive, and aiding and abetting, in violation of 18 U.S.C. §§ 844(i) and 2</u>

Title 18, United States Code, Section 844(i) provides that "[w]hoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce shall be imprisoned for not less than 5 years and not more than 20 years."

Title 18, United States Code, Section 2 provides that "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."

To convict the defendant of maliciously damaging property used in interstate commerce by means of an explosive, and aiding and abetting the government must prove the following elements:

1. The defendant used fire or an explosive to damage or destroy property;
2. The defendant acted maliciously;
3. The property was used in or affected interstate commerce; and
4. The defendant aided and abetted the commission of this crime.

### III. <u>Maximum Penalties</u>

A. <u>Counts One Through Three, Five, and Six – Conspiracy to maliciously damage property used in interstate commerce by action of an explosive and maliciously damaging property used in interstate commerce by action of an explosive, and aiding and abetting – 18 U.S.C. §§ 844(n), 844(i), and 2</u>:

The defendant faces a maximum sentence of 20 years' imprisonment, with a mandatory minimum five-years' imprisonment, a three-year period of supervised release, a $250,000 fine, and a $100 special assessment, per count of conviction.

B. <u>Total Maximum Sentence</u>

The defendant faces a total maximum penalty of 100 years' imprisonment, a mandatory minimum of five years' imprisonment, a 3-year period of supervised release, a $1,250,000 fine, and an $500 special assessment.  Full restitution of as much as $256,083 also shall be ordered.

### IV. <u>Factual Basis for the Plea</u>

Between October 28, 2021, and December 2, 2020, defendant McFall, along with Cushmir McBride and Kamar Thompson, conspired and agreed to maliciously damage and destroy, and attempt to damage and destroy, by means of fire or an explosive, ATMs used in interstate commerce.  Specifically, on multiple occasions, defendant McFall, in concert with,

3

McBride and McFall detonated explosive devices on ATMs located in Philadelphia and Delaware in order to access and steal the cash inside.

Defendant McFall, along with Cushmir McBride and Kamar Thompson drove in vehicles to locations with ATMs, for the purpose of detonating explosives to destroy the ATMs, and to steal the United States currency contained inside the ATMs. Defendant McFall, Cushmir McBride, and Kamar Thompson used tools, including but not limited to, hammers, axes, saws, crowbars, and other equipment, and wore construction clothing to facilitate and carry out their plan to destroy ATMs with explosive devices and to steal the United States currency contained inside the ATMs. Defendant McFall, Kamar Thompson and Cushmir McBride entered or broke into businesses to gain access to ATMs inside, and used explosives to destroy the ATMs and to steal the United States currency contained inside the ATMs. Finally, defendant McFall, along with Kamar Thompson and Cushmir McBride, covered their faces with masks and wore other items of clothing to conceal their identities and to evade capture by law enforcement.

On October 28, 2020, defendant McFall, Cushmir McBride, and Kamar Thompson drove together in a vehicle to the Target located at 2701 Castor Avenue, Philadelphia, Pennsylvania (hereinafter referred to as "the Castor Avenue Target"). After arriving at the Castor Avenue Target, Kamar Thompson and Cushmir McBride, wearing masks to conceal their identities, entered the store carrying tools, and defendant McFall remained in the vehicle as the lookout and getaway driver. After entering the Castor Avenue Target, Cushmir McBride retrieved a safety jacket from the floor of the Target and put it on. Kamar Thompson and Cushmir McBride then used the tools to break open the ATM. Kamar Thompson placed an explosive device inside of the ATM and lit it. The explosive device detonated, damaging the ATM, and allowing Kamar

4

Thompson and McBride to gain access to the United States currency inside. Kamar Thompson and Cushmir McBride stole approximately $39,628 from the ATM, left the store, and rejoined defendant McFall in the getaway vehicle. Kamar Thompson, Cushmir McBride, and defendant McFall then fled the area in their vehicle.

On October 29, 2020, defendant McFall, Cushmir McBride, and Kamar Thompson drove together in a vehicle to the Wawa located 3230 Richmond Street, Philadelphia, Pennsylvania (hereinafter referred to as "the Richmond Street Wawa"). After arriving at the Richmond Street Wawa, Kamar Thompson and Cushmir McBride, wearing construction safety vests, and masks to conceal their identities, and carrying crowbars, unsuccessfully attempted to break into the Richmond Street Wawa through a side door. Thompson and McBride then forcibly entered the store through the front door, while defendant McFall remained in the vehicle as the lookout and getaway driver. While inside the Richmond Street Wawa, Kamar Thompson and Cushmir McBride used pry bars to open two PNC Bank ATMs. After breaking open the ATMs with the tools, Cushmir McBride placed an explosive device inside of the ATM and lit it. The explosive device detonated, damaging the ATM, and allowing Thompson and McBride to gain access to the United States currency inside. Thompson and McBride stole approximately $150,610 from the ATMs, placed the stolen money in a trash can from store, left store, and defendant McFall in the getaway vehicle. Defendant McFall, Cushmir McBride and Kamar Thompson fled the area in their vehicle and drove to a secure location near the Pennsylvania/Delaware border.

On or about November 5, 2020, Kamar Thompson and Cushmir McBride drove from Philadelphia to Claymont, Delaware, and met defendant McFall. Defendant McFall, Cushmir McBride and Kamar Thompson drove together to the Wawa, located at 601 Naamans Road,

Claymont, Delaware (hereinafter referred to as "the Naamans Road Wawa") in Kamar Thompson's vehicle, which had its vehicle identification number covered and a stolen registration plate affixed to it, in order to conceal the identity of the true owner of the vehicle. Defendant McFall drove Thompson's vehicle to the Naamans Road Wawa. After arriving, defendant McFall, Cushmir McBride and Kamar Thompson parked the vehicle and remained for a brief time. Defendant McFall, McBride and Thompson then drove out of the parking lot and left the area. After leaving the Naamans Road Wawa, defendant McFall, McBride and Thompson drove together in Thompson's vehicle to the Wawa at 301 Ridge Road, Claymont, Delaware (hereinafter referred to as "the Ridge Road Wawa"). After arriving at the Ridge Road Wawa, Thompson and McBride entered the store, which was open for business, while wearing construction safety vests, masks to conceal their identities, and armed with crowbars, as defendant McFall remained in the vehicle as the lookout and getaway driver. After entering the Ridge Road Wawa, Thompson locked the door behind them, preventing the employees inside from leaving and preventing anyone from entering the store. Thompson brandished the crowbar, corralled the store employees, forced them to sit on the floor, and demanded their cellular phones. McBride approached the ATM, placed an explosive device into an ATM, and lit it. The explosive device detonated, damaging the ATM, but Thompson and McBride were unable to gain access to the United States currency inside. Thompson and McBride then fled the store and rejoined defendant McFall in the getaway vehicle and fled the area.

On December 2, 2020, Kamar Thompson and Cushmir McBride, drove together in a vehicle to the Wells Fargo ATM, located at 4600 Roosevelt Boulevard, Philadelphia, Pennsylvania. Defendant McFall drove in a separate vehicle to the Wells Fargo ATM, located

6

at 4600 Roosevelt Boulevard, Philadelphia, Pennsylvania.   Thompson and McBride wore construction safety vests, and masks to conceal their identities.   Thompson and Cushmir McBride left the vehicle, set up orange traffic cones in the parking lot, and approached the ATM where Thompson and Cushmir McBride placed an explosive device inside the ATM and lit it.  The explosive device detonated, damaging the ATM, but Thompson and McBride were unable to gain access to the United States currency inside.   Thompson and McBride then placed a second explosive device inside of the ATM and lit it.   The explosive device detonated, causing further damage to the ATM, and allowing Thompson and McBride to gain access to the United States currency inside.   As Thompson and McBride were stealing money from the ATM, defendant McFall stayed in his vehicle, and acted as a lookout for any police or law enforcement activity.  Thompson and Cushmir McBride stole approximately $65,845 from the ATM and fled the area in their vehicle.   Thompson and Cushmir McBride met defendant McFall to distribute the proceeds from the robbery of the Wells Fargo ATM on December 2, 2020.

  The Target store located at 2701 Castor Avenue, Philadelphia, Pennsylvania, sold products that were manufactured outside of Pennsylvania.   Similarly, the Wawa stores located at 3230 Richmond Street, Philadelphia, Pennsylvania and 301 Ridge Road, Claymont, Delaware, all sold products manufactured outside of Pennsylvania (as to the Richmond Street and Roosevelt Boulevard locations) and Delaware (as to the Ridge Road location).   In addition, the ATM located inside of the Target was owned and operated by Capitol One Bank.   Finally, the ATM located at 4600 Roosevelt Boulevard, Philadelphia, Pennsylvania, was owned and operated by Wells Fargo Bank.   Capitol One Bank and Wells Fargo Bank have branches located throughout the United States, including Pennsylvania and elsewhere.   Thus, the defendant and

his co-conspirators damaged property used in interstate commerce by maliciously damaging the ATMs in Philadelphia and Delaware noted above.

If this case went to trial, the government would call a Forensic Chemist from the Bureau of Alcohol, Tobacco, Firearms and Explosives who, following each of the explosive incidents described above, examined materials recovered from each crime scene. The expert witness would testify that the cardboard and other materials that were recovered from each ATM incident had explosive residue or other indicators that confirmed that explosives were used in each incident.

**IV.**     **Terms of Plea Agreement**

The guilty plea agreement provides that:

- The defendant will plead guilty to Counts One, Two, Three, Five, and Six as charged in the indictment under Fed. R. Crim. P. 11(c)(1)(C).

- The parties have agreed that the following specific sentence is the appropriate disposition of this case: a sentence of imprisonment within the range of 84 months, a fine as directed by the Court, a three-year period of supervised release, and a $100 special assessment.

- If the Court does not accept this plea agreement, then either the defendant or the government will have the right to withdraw from the plea agreement and the defendant may withdraw his guilty plea.

- The defendant has agreed that the maximum penalty the Court could have imposed, should the defendant have gone to trial, and been convicted, was as follows: the defendant faces a total maximum sentence of 100 years'

imprisonment, three years of supervised release, a $1,250,000 fine and a $500 special assessment.

- No one has promised or guaranteed to the defendant that the Court will accept the plea agreement.

- The parties have agreed that they will not seek or recommend any sentence except that agreed upon in the guilty plea agreement.

- The defendant is satisfied with his counsel's representation.

- There are no promises or agreements other than those contained in the written plea agreement.

- In the Acknowledgment of Rights form attached to the guilty plea agreement, the defendant has acknowledged the various rights he is waiving by entering a plea of guilty.

A copy of the plea agreement is attached to this memorandum.

V. **Conclusion**

For the foregoing reasons, the government requests that the Court accept the defendant's plea of guilty.

Respectfully submitted,

Jacqueline C. Romero
United States Attorney

Robert E. Eckert
Assistant United States Attorney

Dated: June 23, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on this date I caused a true and correct copy of the foregoing to be served via electronic mail upon the following:

> Heather Mattes Esq.
> hjm@hjmattes.com

Robert E. Eckert
Assistant United States Attorney

Dated: June 23, 2022